

**SO ORDERED.**

**SIGNED this 02 day of October, 2007.**

_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:                                    )

                                         )

BRUCE EARL ANDERSON,             )       **Case No. 05-19222**

                                       )       **Chapter 7**

                     **Debtor.**        )

_____)

**MEMORANDUM OPINION**

The chapter 7 trustee, Linda S. Parks, objects to debtor's claim of homestead exemption under 11 U.S.C. § 522(p)(1), arguing that debtor acquired an interest in a homestead in excess of $125,000 during the 1,215 day period prior to filing bankruptcy.[1] The trustee moves for summary

---

[1] The trustee appears by Scott M. Hill of Hite, Fanning & Honeyman, Wichita, Kansas. The debtor appears by J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, Wichita, Kansas.

1

judgment on her objection.[2]  The debtor opposes the trustee's motion and has filed an untimely cross-motion for summary judgment.[3]  The trustee has filed a combined reply and response to the debtor's cross-motion for summary judgment.[4]  The Court has also received responses from Central Plains Steel Co. and Salina Steel Supply, Inc. in opposition to the debtor's cross-motion for summary judgment.[5]

## Nature of Case

This is the first occasion the Court has had to consider the limits placed on state law homestead exemptions by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[6]  New § 522(p)(1) states:

---

[2]  Dkt. 249 and 250.  The trustee also objected to debtor's homestead exemption on the basis of § 522(o).  *See* Dkt. 21.  Because the trustee's summary judgment motion addresses only one of her grounds for objection to the exemption, the Court construes the trustee's motion as one for partial summary judgment.  Two creditors, Salina Steel Supply, Inc. and Central Plains Steel Co., have joined in the trustee's objections to debtor's homestead exemption.  *See* Dkt. 66 and 70.

[3]  Dkt. 259.  Debtor's combined response and cross-motion were filed August 27, 2007.  The deadline for filing dispositive motions was July 27, 2007. *See* Dkt. 245.  Debtor's response and cross-motion drew a motion to dismiss/strike from the trustee.  She complains of the untimeliness of the cross-motion and the debtor's raising of new matters in defense of summary judgment that were not presented by debtor in the final pretrial order.  *See* Dkt. 263.  The Court will address the trustee's motion later in this opinion.

[4]  Dkt. 269.

[5]  Dkt. 270 and 271.

[6]  11 U.S.C. § 522(p)(1) (Thomson/West 2005).  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was signed into law on April 20, 2005.  Most of BAPCPA's provisions carried an effective date of October 17, 2005.  11 U.S.C. § 522(p), however, is one of the few provisions that became effective upon its enactment, April 20, 2005.  *See* Pub. L. 109-8, Title XV, § 1501(b)(2), Apr. 20, 2005, 119 Stat. 216.  The parties do not dispute that § 522(p) went into effect upon its enactment and applies to bankruptcy cases commenced on or after April 20, 2005.

Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,0000[7] in value in – . . . (D) real or personal property that the debtor or a dependent of the debtor claims as a homestead.[8]

The issue presented by these motions is whether § 522(p)(1) applies to the situation where a debtor purchases his homestead well outside the 1,215 day period preceding the bankruptcy filing but pays down the mortgage in excess of $125,000 during the 1,215 day period. For the reasons set forth below, the Court concludes that it does not.

### Jurisdiction

The allowance or disallowance of an exemption from property of the estate is a core proceeding over which this Court has subject matter jurisdiction.[9]

### Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure. Rule 56, in articulating the standard of review for summary judgment motions, provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is

---

[7] Effective April 1, 2007, the cap was raised from $125,000 to $136,875. *SEE* ALAN N. RESNICK AND HENRY J. SOMMER, EDITORS-IN-CHIEF, 4 COLLIER ON BANKRUPTCY, ¶ 522.13 [1], n. 1 (15th ed Rev. 2007) (hereafter "Collier" or "Collier on Bankruptcy").

[8] None of the exceptions described: § 522(p)(2), § 544, and § 548, are implicated by this summary judgment motion.

[9] 28 U.S.C. § 157(a) and (b)(2)(B) and § 1334.

3

entitled to judgment as a matter of law.[10]  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no genuine issue of material fact."[11]  In determining whether any genuine issues of material fact exist, the Court must construe the record in a light most favorable to the party opposing the summary judgment.[12]  However, the opposing party's conclusive allegations are not sufficient to establish an issue of fact and defeat the motion.[13]

As noted below, the facts in this case are uncontroverted except for the source of some payments made on the mortgage against the homestead.  Because the source of payment is not a genuine issue of material fact necessary to the Court's determination of the applicability of § 522(p)(1), this factual dispute is disregarded.

### Findings of Fact

The facts set forth below are uncontroverted.  They are gleaned from the trustee's statement of uncontroverted facts and the debtor's responses thereto.

1. On December 7, 1998, debtor and his non-debtor wife purchased the property at 1220 Burning Tree, Wichita, Kansas ("the Property") for $350,000.  Debtor and his wife granted a mortgage on the Property in favor of Midland National Bank in the amount of $375,000.  Debtor and his wife hold title to the Property as joint tenants with right of survivorship.

---

[10]  Fed. R. Civ. P. 56(c).

[11]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

[12]  *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

[13]  *Id.*

4

2.      On or about November 22, 2000, debtor and his wife refinanced the Property, executing a $500,000 note and mortgage in favor of Capitol Federal Savings. The Midland mortgage was released. An appraisal obtained in conjunction with the Capitol Federal Savings mortgage reflects a market value of $650,000 for the Property.

3.      Between June 16, 2002 and October 14, 2005, payments totaling $161,480.02 were made to Capitol Federal Savings on the mortgage, reducing the principal on the mortgage by $74,989.79.[14]

4.      On July 18, 2005, debtor paid $240,000 to Capitol Federal Savings on the mortgage. This payment reduced the principal amount of the mortgage by $239,025 and left an ending daily balance on the mortgage of $172,380.[15]

5.      Debtor filed his voluntary chapter 7 petition on October 14, 2005.

6.      The 1,215-day period preceding the date of filing is June 17, 2002 to October 14, 2005.[16]

7.      On Schedule C, debtor claims the Property exempt as his homestead pursuant to state

---

[14] The source of these payments is disputed by debtor. Debtor contends that these payments were made by his wife from her own funds. The total amount of the payments and the amount of principal reduction, however, is not controverted.

[15] The source of this payment is also disputed. Although debtor admits that he paid the $240,000 pursuant to a check drawn on his account and that the funds in the account derive from the sale of property in Newton and liquidation of two certificates of deposit, he contends that his wife was a joint owner of the two certificates of deposit.

[16] The trustee states that the 1,215-day period began on June 16, 2002. In his response, debtor states that the year 2004 was a leap year, and therefore the start of the 1,215-day period is June 17, 2002. For purposes of this summary judgment motion, the Court accepts the debtor's calculation. The Court's conclusion is not altered by the differing start dates of the 1,215-day period.

5

law, KAN. STAT. ANN. § 60-2301 (2005). Debtor lists the value of the claimed

exemption as $241,546 and the current market value of the Property as $411,800.

Debtor's market value is based upon the 2005 county tax appraisal for ad valorem

taxes.

8.     On Schedule D, debtor lists Capitol Federal Savings as a secured creditor having a

       claim of $170,253 by virtue of its mortgage on the Property.

9.     The trustee requested and obtained an independent appraisal of the Property.

       According to this appraisal, the fair market value of the Property as of the date of

       debtor's bankruptcy filing is $625,000.

**Analysis**

One of the real or perceived abuses that BAPCPA set out to remedy was debtors' use of

unlimited state homestead exemptions.[17] Kansas is one of a very few states that place no dollar limit

on the amount or value of the homestead exemption.[18]  BAPCPA's answer to unlimited state

homestead exemptions was the enactment of § 522(p)(1).  It purports to narrow the so-called

"mansion loophole."[19]  Section 522(p) caps the amount of interest in the homestead that can be

---

[17]  Kansas is an "opt-out" state and bankruptcy debtors may not avail themselves of the
federal exemptions allowed by 11 U.S.C. § 522(b)(2) and (d).  *See* KAN. STAT. ANN. § 60-2312
(2005).

[18]  Kansas' homestead exemption statute, KAN. STAT. ANN. § 60-2301 (2005) provides:
"A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an
incorporated town or city, or a manufactured home or mobile home, occupied as a residence by
the owner or by the family of the owner, or by both the owner and family thereof, together with
all the improvements on the same, shall be exempted from forced sale under any process of law
and shall not be alienated without the joint consent of husband and wife, when that relation
exists . . . ."

[19]  *See* WILLIAM L. NORTON, JR., 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D, §
46:5, p.46-19 (Thomson/West 2005) ("The provision [subsection (p)(1)] purports to close the so-

6

claimed exempt where that interest was acquired during the 1,215 days before filing bankruptcy.

New section 522(p) states:

(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any *amount of interest that was acquired by the debtor* during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in –

      (A) real or personal property that the debtor or a dependent of the debtor uses as a residence; . . .
      (D) real or personal property that the debtor or dependent of the debtor claims as a homestead. [Emphasis added].

(2)(A) The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer;
 (B) For purposes of paragraph (1), any amount of such interest does not include any interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.[20]

The key inquiry in the case at bar is interpreting the "interest" referenced in § 522(p)(1) and

the nature of the "interest" debtor acquired during the 1,215-day period.  The trustee argues that the

---

called "mansion loophole," although it is evident by its terms that it only applies to mansions acquired within approximately 40 months [1,215 days] of bankruptcy.").  *See also, In re Kane*, 336 B.R. 477 (Bankr. D. Nev. 2006) for an extensive discussion of the mansion loophole and legislative history directed at closing debtor's "forum shopping" for generous homestead exemptions.

  [20]  (Emphasis added.).  Section 522(p)(2)(A) excludes family farmers from the $125,000 cap in subsection (p)(1).  Section 522(p)(2)(B) preserves a "rollover" of a debtor's residence during the 1,215 day look back by excepting this transaction from the $125,000 cap so long as the two residences are located in the same state.  Section 522(p)(1) was intended to stop debtors from moving to another state to take advantage of that state's generous homestead exemption; the (p)(2)(B) exception saves debtors from the cap who did not transfer into the current residence by moving to another state to take advantage of a more generous exemption. *See* WILLIAM L. NORTON, JR., 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D, § 46:5, p.46-21-22 (Thomson/West 2005).  *See also, In re Wayrynen*, 332 B.R. 479 (Bankr. S.D. Fla. 2005). Neither exception in subsection (p)(2) is applicable under the facts of this case.

"amount" of interest referenced in subsection (p) is the equity in the homestead. Thus, the trustee reasons, by affirmatively paying down the mortgage during the 1,215-day period and building the amount of equity a debtor has in his homestead, the debtor has "acquired" an interest. Under the trustee's analysis, the debtor's pay down on the principal amount of the mortgage increased the debtor's equity in the property in an amount in excess of $125,000 during the 1,215 day period. Under the trustee's facts, the payments on the mortgage reduced the principal amount of the mortgage by some $314,014.[21]

The debtor counters with the argument that one does not "acquire" equity in property. Instead, debtor submits that the interest referenced in subsection (p) means title and ownership to the property. Debtor thus argues that where a debtor purchases the property and obtains title to the property well outside the 1,215-day period, the debtor has not acquired an interest in the property during the 1,215-day period and § 522(p)(1) is inapplicable. Debtor contends that the conduct of building equity in the property by making mortgage payments during the 1,215 day period is not subject to the $125,000 cap. The debtor cites two bankruptcy decisions and Collier's treatise in support of his position.[22]

The trustee relies on a Florida bankruptcy court decision – *In re Rasmussen*.[23] But *Rasmussen* is questionable support for the trustee's position that § 522(p)(1) applies to equity

---

[21] The regular payments totaling $161,480 during the 1,215-day period reduced the principal balance of the mortgage by $74,989. Debtor's $240,000 payment on the mortgage on July 18, 2005 reduced the principal balance of the mortgage by $239,025. ($74,989 + $239,025 = $314,014).

[22] *In re Sainlar*, 344 B.R. 669 (Bankr. M.D. Fla. 2006); *In re Blair*, 334 B.R. 374 (Bankr. N.D. Tex. 2005).

[23] 349 B.R. 747 (Bankr. M.D. Fla. 2006).

Case 05-19222    Doc# 274    Filed 10/02/07    Page 8 of 22

"acquired" during the 1,215-day period. *Rasmussen* can be readily distinguished from the instant

case on its facts. In *Rasmussen* the joint debtors purchased their Florida homestead *within* the 1,215

day period prior to filing bankruptcy. Their purchase was partially funded from proceeds rolled over

from the sale of their previous Florida homestead (thus implicating the § 522(p)(2)(B) exception)

and a mortgage loan. At the time of filing, the value of the homestead had appreciated some

$400,000 since its purchase. Based upon the values in the schedules, debtors had $175,000 of

equity in their homestead on the date of filing. Apart from the issue whether the $125,000 cap may

be stacked in a joint case, the Florida bankruptcy court framed the remaining issue as follows:

"whether the increase in value of the Homestead attributable to appreciation [occurring during the

1,215-day period] falls within the section 522(p) cap."[24]

In reaching its conclusion that appreciation in value is not subject to the $125,000 limit, the

bankruptcy court went through the language of §522(p)(1) and construed the key phrases "any

amount of interest" and "acquired by the debtor." It concluded that because appreciation in value

is not "acquired by the debtor," it was not subject to § 522(p)(1).[25] The bankruptcy court did,

however, conclude that the "interest" referenced in subsection (p)(1) means equity, drawing its

interpretation from the use of the same language in subsection (p)(2)(B):

> This conclusion is buttressed by the use of the same phrase "any amount of
> interest" . . . in section 522(p)(2)(B): "For purposes of paragraph (1), *any amount of
> such interest* does not include any interest transferred from a debtor's previous
> principal residence . . . into the debtor's current principal residence . . . ." 11 U.S.C.
> § 522(p)(2)(B) (emphasis added). This second use of the term "interest" can only
> refer to the equity in the prior residence that is rolled into the current
> homestead.[citations omitted]. Thus it is clear that section 522(p)(2)(B) defines

---

[24] 349 B.R. at 751.

[25] *Id.* at 757-58.

9

"interest" through usage to mean the debtor's equity in the property – not the debtor's fee simple interest. While one may roll equity from one property to another, one does not roll a fee simple property ownership interest from one property to another.[26]

Applying rules of statutory construction, the bankruptcy court concluded that the "interest" in § 522(p)(1) means equity in the homestead "just as it means equity in a prior homestead when referenced in section 522(p)(2)."[27]

Ultimately, the *Rasmussen* court overruled the trustee's objection to debtors' homestead exemption, concluding that equity resulting from appreciation in market conditions does not constitute an interest acquired by the debtors within the meaning of § 522(p)(1). No attempt was made to calculate the amount of equity "acquired" by the debtors versus the amount of equity attributable to appreciation because the total equity did not exceed the § 522(p)(1) cap where each debtor could claim the exemption up to $125,000.

The two decisions cited by the debtors in support of their position are more directly on point with the facts of this case, although obviously not controlling on this Court. The first, *In re Sainlar*, is also out of the bankruptcy court for the Middle District of Florida and was actually decided prior to *Rasmussen*.[28] In *Sainlar*, the debtors homestead exemption claim drew a § 522(p)(1) objection. Even though the debtors purchased the homestead long before the start of the 1,215-day look back period, the objecting creditor contended that the equity gained in the property during the 1,215 day period was subject to the limit in § 522(p)(1). The bankruptcy court disagreed, overruling the objection and allowing the debtors' claim of homestead exemption:

---

[26] *Id.* at 756.

[27] *Id.*

[28] 344 B.R. 669 (Bankr. M.D. Fla. 2006).

10

The statute [§ 522(p)(1)] has no applicability to property in which a debtor obtained an ownership interest more than 1,215 days before the petition date, even if the property's equity increases during the 1,215-day pre-petition period.[29]

As the bankruptcy court observed, the "interest" a debtor must acquire to come within the limits of § 522(p)(1) is not defined by BAPCPA and is not a term of art in the law of property. The bankruptcy court found that the plain language of § 522(p)(1) was unambiguous. It applied the Black's Law Dictionary definitions to "interest," and "acquired" and distinguished "interest" and "equity" as follows:

> "Interest" is defined as "[a] legal share in something; all or part of a legal or equitable claim to or right in property." Title to real property is acquired, equity is not. Equity is the difference between value and debt. It [equity] is not a constant, but fluctuates based upon market conditions and when mortgage principal is paid. A debtor who holds title to property obtained that property as the debtor's own. The debtor's interest in the property is his legal right in the property.
>
> The phrase "interest that was acquired" as used in § 522(p)(1) means the acquisition of ownership of real property. Section 522(p), therefore, does not apply to property to which a debtor acquired title more than 1,215 days before a bankruptcy filing.[30]

The *Sainlar* court went on to conclude that even though it need not resort to the legislative history to ascertain the meaning of "interest" in § 522(p)(1), the legislative history supported its interpretation that "interest" means the acquisition of ownership of property. It cited the legislative history to restrict the "mansion loophole."[31]

The other case cited by debtors, *In re Blair*,[32] is in accord with *Sainlar*. In *Blair*, the debtors

---

[29] *Id.* at 674.

[30] 344 B.R. at 673.

[31] *Id.*

[32] 334 B.R. 374 (Bankr. N.D. Tex. 2005).

11

purchased their Texas homestead on July 18, 2000. They filed their chapter 7 petition on May 27, 2005 and claimed the homestead exempt.[33] On Schedule C, debtors valued the equity in their homestead at approximately $688,000. Debtors made regular mortgage payments and built-up equity in the homestead during the 1,215-day period. A creditor objected under § 522(p) to the debtors' claim of exemption, contending that the increase in equity in excess of $125,000 during the 1,215 day period was subject to the cap and not exempt.

The Texas bankruptcy court held that the plaint meaning of "interest" in § 522(p)(1) means the title and fee to a home acquired by a debtor. It observed that one does not actually "acquire" equity in a home.[34] The Texas bankruptcy court concluded that its interpretation of § 522(p)(1) was supported by the rollover exception in § 522(p)(2)(B):

> . . . this subsection allows for rollover by debtors of the equity in one home to another home located in the same state. A debtor is not subject to the homestead cap if he takes the proceeds of his first residence and reinvests them in a second residence even within the prescribed period of section 522(p). The bank's reading of the statute would seem at odds with this provision. If debtors had sold their home during the 1215 day period and bought another they would be protected. Surely the non-selling debtors should enjoy the same protections.[35]

The *Blair* court purported to find that the statutory language of § 522(p)(1) was unambiguous,

---

[33] Like Kansas, Texas provides for an unlimited homestead exemption.

[34] Even the *Rasmussen* court recognized that not all "equity" is truly "acquired" by the debtor: "As stated in *Sainlar*, '[t]he plain import of the word [acquired] is 'obtained as one's own.'" *Sainlar*, 344 B.R. at 672-73. In this regard, a debtor may acquire or obtain equity by making a down payment, by paying down the mortgage, or by appreciation due to market conditions. The first two methods of acquiring equity requires active conduct on the part of the debtor – payment of money. The third, appreciation, is passive, requiring no active conduct." *Rasmussen*, 349 B.R. at 757. The *Rasmussen* court concluded that § 522(p)(1) captures active acquisition of equity but not passive acquisition of equity, even though the language in § 522(p)(1) makes no distinction between active and passive equity and § 522(p)(2)(B) seemingly *excepts* actively acquired equity from the homestead cap in certain instances.

[35] 334 B.R. at 377.

making resort to legislative history unnecessary – "the statute is reasonably clear in its application to real property acquired within the statutory period."[36] The bankruptcy court went on to declare that even if it were required to examine legislative history, it would also support this interpretation of "interest" in § 522(p)(1).

> Essentially, while the language of the statute is broader, one purpose was to prevent out of state residents from moving to certain states [those with unlimited homestead exemptions] in order to file for bankruptcy under more advantageous state homestead exemption laws.[37]

The *Blair* court thus concluded that the increase in the value of the equity in the debtors' homestead that was acquired more than 1,215 days prior to the petition date was not subject to the $125,000 cap in § 522(p)(1).

This Court has reviewed in-depth the cases cited above and other authoritative bankruptcy treatises and concludes that *Blair* and *Sainlar* better analyze and interpret § 522(p)(1). Because the debtor in *Rasmussen* purchased the property *within* the 1,215 day period, and because that case involves equity obtained through market appreciation, it is factually distinguishable from the instant case and is simply not persuasive on the issue framed here. The courts that have viewed *Rasmussen* favorably are *In re Rogers*[38] and *In re Chouinard*.[39] *Chouinard* is virtually identical to the facts of *Rasmussen* and distinguishable from our case. The debtors purchased their home *within* the 1,215 day period and the court held that equity resulting from passive market appreciation of the property is not an interest subject to the $125,000 cap but that non-scheduled reductions in principal might

---

[36] *Id.*

[37] *Id.* at 378.

[38] 354 B.R. 792, 798 (N.D. Tex. 2006).

[39] 358 B.R. 814 (Bankr. M.D. Fla. 2006).

13

be.

Similarly, *Rogers* does not address the application of § 522(p)(1) to a situation where the debtor acquires the real property outside the 1,215 day period and pays down the mortgage during the 1,215 day period. In that case, the debtor acquired the property outside the 1,215 day period but first declared the property as her homestead during the 1,215 day period. The objecting creditor unsuccessfully argued that the classification of real property as a homestead is an "interest" in property and subject to the $125,000 limit of § 522(p)(1). The Texas district court determined that the plain meaning of "interest" refers "to some legal or equitable interest that can be quantified by a monetary figure."[40] Applying this interpretation, it held that a debtor who inherited real property outside the 1,215 day period but did not begin to occupy the property and claim it as her homestead until the 1,215 day period prior to filing was not subject to the § 522(p)(1) cap.[41]

This Court has misgivings about the *Rasmussen, Rogers,* and *Chouinard* case as persuasive authority in the matter at bar. There is no suggestion in *Rasmussen* that those debtors paid additional funds to their home lender in the 1215 day period. The only value the trustee sought to recover in *Rasmussen* was the appreciated value of the debtors' previous homestead. While the *Rasmussen* court declined to conclude that debtors "acquire" appreciation equity, it volunteered that equity generated by voluntary pay-down of a mortgage might, in fact, be deemed "acquired" equity. In

---

[40] 354 B.R. at 796.

[41] *Id.* at 798 ("By ruling that the term "interest" does not encompass the classification of real property as a homestead, the court concludes that the limitations of § 522(p) are wholly inapplicable to this case."). *But see, In re Greene*, 346 B.R. 835, 840-43 (Bankr. D. Nev. 2006) (Debtor who purchased property well before the 1,215 day period but recorded declaration of property as his homestead within the 1,215 day period was subject to § 522(p); court found that homestead interest was separate interest from ownership of real property).

14

*Chouinard*, the court opined that equity "acquired" via regular monthly payments might not count toward the $125,000 cap, but that off-schedule extra payments would be recoverable. In the *Chouinard* case, there was no suggestion that such payments had been made. Because neither of these cases involved extra payments in the 1215 day period, this Court considers their statements concerning such payments and the equity those payments generate to be dicta and therefore unpersuasive.

The Court's independent research of other cases construing § 522(p)(1) suggest, without deciding, that the interest that must be acquired by the debtor during the 1,215 day look-back period is one of ownership.[42] The lone appellate court decision construing § 522(p)(1) and the term "interest" is *In re Khan*.[43] In that case, the First Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's order sustaining the trustee's objection to the debtor's homestead exemption. The issue was framed as follows: " . . . whether an interest in property transferred to the Debtor by a trust is considered an interest acquired by the Debtor within the time period [1,215 days preceding

_____

[42] While most of those cases reviewed address the question of whether § 522(p)(1) applies to debtors in opt-out states, and did not directly address the nature of the "interest" referenced in the statute, the language utilized by those courts suggests that the "interest" is one of ownership. *See e.g., In re Landahl*, 338 B.R 920, 921 (Bankr. M.D. Fla. 2006) (The bankruptcy court stated the issue as whether the homestead limit of $125,000 applies "if the debtor has not *owned* the residence for 1,215 days before filing . . . ."); *In re Summers*, 344 B.R. 108, 111 (Bankr. D. Ariz. 2006) (Stating that by enacting § 522(p)(1) "Congress has established a homestead exemption cap of $125,000 if a *homestead* is acquired within 1,215 days . . ."); *In re Kane*, 336 B.R. 477, 479 (Bankr. D. Nev. 2006) (referring to the 1,215 day limit on homestead exemption as containing an "ownership requirement"). *See also, In re Leung*, 356 B.R. 317 (Bankr. D. Mass. 2006) (Debtor acquired an interest within the 1,215 day period when non-debtor wife, in whom the property had been solely titled, deeded the property to herself and debtor as tenants by the entirety; even though the deed was a gift by his wife, debtor accepted delivery of the deed and affirmatively declared the property as his homestead during the look-back period).

[43] ___ B.R. ___, 2007 WL 2506031 (1st Cir. BAP Sept. 6, 2007).

15

the filing of bankruptcy] . . . thereby resulting in a limitation of the amount of homestead exemption that may be claimed by the Debtor."[44]  In *Khan*, real property was held in a family trust since 1997. The debtor and his brother, were the co-trustees and co-beneficiaries of the trust.  Within 1,215 days of filing bankruptcy, the real property was conveyed by the trust to the debtor and his brother as joint tenants with right of survivorship.  Contemporaneous with recording of the deed, the debtor filed a declaration of homestead.  Debtor argued that he held legal title to the property as a co-beneficiary of a nominee trust,[45] prior to the conveyance of the deed, and therefore did not acquire an interest subject to the limitation in § 522(p).  The appellate court rejected the debtor's nominee trust argument because he had not raised it in the bankruptcy court and had failed to introduce the trust declaration as evidence below.   Because debtor could not prove the interest he held in the property  prior to the conveyance, the trustee's objection was sustained.  The appellate court concluded, and it was undisputed, that "legal title to the Property was transferred from the Trust to the Debtor and his brother less than 1215 days prior to the Petition Date."[46]  Debtor's claim of homestead exemption was therefore subject to the statutory limit of § 522(p)(1).

　　Nearly all of the courts that have interpreted the term "interest" in § 522(p)(1) have concluded that it is unambiguous and should be given its plain meaning.  Even if the plain language of § 522(p)(1) does not unambiguously refer to title or ownership of a homestead acquired during the 1,215 look-back period, resort to the legislative history and reading of § 522(p)(1) in conjunction

---

[44]  *Id.* at *1.

[45]  The appellate court described a nominee trust under Massachusetts law as "an entity created for the purpose of holding legal title to property with the trustee having only perfunctory duties" and "in a nominee trust, the legal title of the trustee and the equitable title of the beneficiary merge when the same person hold[s] both titles." *Id.* at *3.

[46]  *Id.* at *7.

16

with other sections of § 522 makes it clear. The Court cannot believe that Congress envisioned limiting a debtor's homestead exemption where, as here, debtor purchased the homestead property some 3½ years prior to the start of the 1,215-day period (and almost 7 years prior to filing bankruptcy) and accumulated equity by making regular mortgage payments. It clearly excepted the accumulation of equity from a rollover of a prior homestead (with some limits) from the operation of § 522(p)(1).[47] If Congress had intended to capture the accumulation of equity during the 1,215 day period, whether by paying down the debt against the property or by appreciation in value of the property, it could have easily used the term "equity" or specifically defined "interest" to include equity in § 522(p)(1). It did not. The Court is convinced that Congress intended to deal with the excessive accumulation of equity in a homestead by its enactment of § 522(o), and it appears that this is the avenue available to the trustee here to contest the homestead exemption claimed by debtor. The Court concludes that accumulation of equity by early payoff or substantially paying down the mortgage against the homestead property, such as debtor's $240,000 one-time lump sum payment during the 1,215 day period here, may be subject to challenge under § 522(o).

There can be no question that § 522(p) is at best a haphazard effort to accomplish the purpose of closing the "mansion loophole." Every court that grapples with subsection (p) shows considerable frustration with the "amount of interest acquired" language in (p)(1), particularly when comparing it to the equity rollover language contained in the safe harbor of (p)(2). Over-emphasis on making every one of these words meaningful results in the counter-intuitive conclusion that a debtor can roll earlier-acquired equity into a new homestead during the 1215 day period with impunity regardless of how that equity was generated, but cannot retain equity gained in the

---

[47] *See* § 522(p)(2)(B).

17

homestead debtor has occupied since before the 1215 day period. This Court is very conscious of its duty to derive the meaning of BAPCPA from the plain meaning of the words of the statute in effectuating the intent of Congress. Yet, the Court understands that many debtors prepay principal on their mortgages, some on a regular basis. This Court cannot conclude that prepayment of a mortgage debt, especially routine prepayment, is the moral equivalent of a maverick capitalist fleeing with his ill-got gains to establish a mansion homestead in Florida, Texas or Kansas. That is the evil that Congress set out to combat in enacting subsection (p). With all deference, Congress should take careful note of the interpretative mayhem that results when well-meaning judges must apply plain meaning to poorly chosen words in awkwardly drafted statutes.

This Court also suspects that practical application of the appreciation v. regular payments v. extra payments distinction the *Rasmussen* and *Chouinard* decisions posit will be harder than it looks. How will courts following the Trustee's theory distinguish between equity "acquired" by appreciation and that acquired by regular, or for that matter irregular, mortgage payments? Such an inquiry would entail not only knowing the value of the property at the date of the petition, but also what the property was worth at the outset of the 1215 days, if not sooner. What if the debtor makes extra-mortgage payments but the property *depreciates* during part of the 1215 day period and appreciates during another part? Or, what if the debtor makes a small extra principal payment monthly, as many mortgagors do? The variations are endless and pointless to adjudicate when Congress has enacted another provision, § 522(o), to deal with the improper conversion of non-exempt assets to homestead equity.

This Court's interpretation of § 522(p)(1) is confirmed by Collier's authoritative treatise on bankruptcy.

The statutory language leaves some uncertainty as to the exact meaning of the phrase "interest that was acquired." In view of the apparent purpose of section 522(p)(1), to discourage the more egregious examples of prebankruptcy exemption planning in which some debtors have purchased "mansion" in states having unlimited homestead exemption laws in contemplation of filing bankruptcy, the phrase should be construed as applying to the actual purchase or acquisition of an ownership or fee interest in the homestead property. Under this view, section 522(p)(1) should not apply to the accumulation of equity in the debtor's homestead resulting from an appreciation in value of the property during the 1,215-day period. Similarly, this provision should not prevent the debtor from claiming as exempt any increase in the debtor's homestead equity by more than [$125,000] attributable to the application of mortgage payments made during the lookback period. However, if the debtor converts nonexempt assets for the purpose of paying down a mortgage, *with an intent to hinder, delay or defraud a creditor,* such transfer may give rise to an objection to the debtor's homestead exemption under section 522(o), but should not fall within the purview of section 522(p)(1).[48]

The Court observes that under the trustee's interpretation advocated here, both § 522(p)(1) and § 522(o) would "catch" the accumulation of equity in a debtor's homestead. Such a reading of § 522 renders subsection (o) superfluous. The inclusion of subsection (o) suggests that Congress intended to treat the build up of equity differently from the acquisition of a homestead. Section 522(o) contains an intent element, while § 522(p)(1) does not. Section 522(o) provides:

> For purposes of subsection (b)(3)(A) [exemptions under State or local law], and notwithstanding subsection (a), the value of an interest in – . . . (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead; shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition *with the intent to hinder, delay, or defraud a creditor* and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of. (Emphasis added.)

Section 522(o) was thus written to limit the debtor's accumulation of equity in his homestead by liquidating non-exempt property and applying the proceeds to the homestead. It contains a 10-year

---

[48] COLLIER ON BANKRUPTCY ¶ 522.13[2], p. 522-102.5.

19

look-back period and requires a showing of intent to hinder, delay, or defraud. By imposing the familiar "intent to hinder, delay or defraud" test, § 522(o) does not preclude the debtor from building up equity in his homestead by making regular mortgage payments called for by the contract, but does limit a debtor's ability to build equity by liquidating non-exempt assets and making payments above and beyond what is required by the terms of the debtor's mortgage if those transfers were done with the requisite bad intent. This is a significant preemption of long-standing Kansas precedent that has, since Statehood, allowed judgment debtors to convert non-exempt assets to exempt assets even on the eve of execution unless the assets converted were charged with a "peculiar equity."[49]

The Court therefore concludes that § 522(p)(1) is inapplicable to a debtor who purchases his homestead outside the 1,215-day look-back period. The accumulation of equity during the look-back period by paying down the mortgage is instead limited by the operation of § 522(o). The Trustee's summary judgment motion should be denied.

This brings the Court to the trustee's motion to dismiss the debtor's cross-motion for summary judgment as untimely and to strike the debtor's newly raised defenses to the trustee's summary judgment motion – namely, that the debtor's wife, a non-debtor, made the regular mortgage payment from her own funds and owned a joint interest in the certificates of deposit that were liquidated and applied to the mortgage.[50] The Court agrees with debtor's contention that it may grant summary judgment on a pure question of law in favor of the non-movant without a cross-

---

[49] *See Metz v. Williams*, 149 Kan. 647, 88 P.2d 1093 (1939); *McConnell v. Wolcott*, 70 Kan. 375, 78 Pac. 848 (1904).

[50] Dkt. 263.

motion for summary judgment.[51]  Thus, the Court declines to consider the debtor's cross-motion for summary judgment because it is untimely.

With respect to the debtor's defense to the trustee's summary judgment motion concerning the source of the payments applied to the mortgage, the Court  has reviewed the final pretrial order and concludes that debtor has not previously raised these matters in defense to the objections to the homestead exemption.  While the source of the payments is not a genuine issue of material fact necessary to the Court's ruling on the applicability of § 522(p)(1) and was not considered by the Court in deciding the trustee's summary judgment motion, it is relevant and material to the trustee's remaining objection to homestead exemption under § 522(o).  Because this newly raised defense is not preserved in the final pretrial order, the Court will permit the trustee, as well as Central Plains Steel Co. and Salina Steel Supply, Inc., to conduct discovery on this defense prior to trial on the § 522(o) objection to homestead exemption.  Debtor shall make himself and his non-debtor wife available for deposition, and produce all relevant documents pertaining to this defense, within ten (10) days of entry of this order.  If he does not do so within the allotted time, debtor will be barred from introducing evidence on this defense at trial.

**Summary**

The Court today holds that § 522(p)(1) is inapplicable to a debtor who purchases his homestead prior to the 1,215-day period immediately preceding the filing of debtor's bankruptcy petition.  The trustee's motion for summary judgment is therefore **DENIED**.[52]  Summary judgment

---

[51]  *See Dickeson v. Quarberg*, 844 F.2d 1435, 1444 n. 8 (10th Cir. 1988); *Calder v. Segal (In re Calder)*, 94 B.R. 200, 203 (Bankr. D. Utah 1988), *aff'd* 912 F.2d 454 (10th Cir. 1990).

[52]  Because of its conclusion regarding the applicability of § 522(p)(1) in this case, the Court does not reach the remaining issues raised by the trustee's summary judgment motion.

Case 05-19222   Doc# 274   Filed 10/02/07   Page 21 of 22

is **GRANTED** in favor of debtor on the trustee's objection to debtor's homestead exemption based upon § 522(p)(1). The trustee's objection to debtor's homestead exemption is currently set for evidentiary hearing on the two-day stack docket commencing **October 23, 2007** and will proceed forward on the basis of the trustee's remaining objection to homestead exemption, § 522(o)**.**[53]

With the result reached by the Court today, the trustee's motion to dismiss debtor's cross-motion for summary judgment is **MOOT** and the trustee's motion to strike debtor's newly raised defense is **TEMPORARILY DENIED.**

IT IS SO ORDERED.

# # #

---

[53] The Court will hear the § 522(o) objections to homestead exemption filed by Central Plains Steel Co. and Salina Steel Supply, Inc. at the same trial setting.

22